# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 18-cv-60009-BLOOM/Valle

GABRIEL MYRTHIL,

      Plaintiff,

v.

CHRISTINE SCHADE, *in her Individual Capacity*; ALLEGRA ADAMSON, *in her Individual Capacity*; and THE CITY OF FORT LAUDERDALE, *a Municipal Corporation*,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Allegra Adamson's Motion to Dismiss Counts III and V of Plaintiff's Second Amended Complaint, ECF No. [45], and Defendant Christine Schade's Motion to Dismiss Counts II and IV of Plaintiff's Second Amended Complaint, ECF No. [56] (together, "Motions"). The Court has reviewed the Motions, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendants' Motions are granted.

## I.      BACKGROUND

Plaintiff is a thirty-six year old African-American male and a resident of Miami-Dade County. ECF No. [36] ¶ 5. On August 3, 2013, Plaintiff was pulled over by Defendants Allegra Adamson ("Officer Adamson") and Christine Schade ("Officer Schade," together, "Officers" or "Defendants") for an alleged seatbelt violation. *Id.* ¶ 12. At the time of the stop, Plaintiff was wearing a black shirt and had the black seatbelt of the driver's seat of the vehicle buckled. *Id.*

¶¶ 14, 16.   As Officers Adamson and Schade approached his stopped car, Plaintiff alleges he removed his seatbelt.  *Id.* ¶¶ 14, 16.   Upon the request of the Officers, Plaintiff provided them with his driver's license and registration.  *Id.* ¶ 17.   Officer Adamson took Plaintiff's license and registration back to the patrol car and Officer Schade remained with Plaintiff who was still sitting in his vehicle.  *Id.* ¶ 18.   Adamson returned to Plaintiff's vehicle and stated that Plaintiff was "clean."  *Id.*

Officer Schade then began questioning Plaintiff.[1]  *Id.* ¶ 19.   Plaintiff, who at the time was on probation, asked to speak with his lawyer.  *Id.* ¶¶ 5, 19.   Officer Schade then opened the door to Plaintiff's car, telling Plaintiff to "Get the fuck out of the car, with your smart ass!" *Id.* at ¶ 20. Officer Schade conducted a pat-down search of Plaintiff.  *Id.*   Officer Schade asked Plaintiff if he consented to a search of his car.  *Id.* ¶ 21.   Plaintiff did not give consent.  *Id.*

Officer Schade then conducted a search of the vehicle's interior and trunk.  *Id.* ¶ 22. Officer Schade located two laptop computers and several credit cards and bank cards not in the Plaintiff's name.  *Id.* ¶¶ 22–23.   Officer Schade contacted a potential victim whose name appeared in the recovered articles, Thomas Henley, to determine if Mr. Henley wished to prosecute Plaintiff.  *Id.* ¶ 24.   According to the Complaint, during this search and call to Mr. Henley, Plaintiff continued to protest the search.  *Id.* ¶ 25.   Officers Adamson and Schade then

---

[1] Attached to the Complaint is an order in the underlying state court criminal action entered by the Honorable Ernest A. Kollra, Jr. of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, ECF No. [36] at 23–33 ("Suppression Order").   The Suppression Order granted Plaintiff's motion to suppress the physical evidence and statements recovered from this stop.   The Suppression Order, as attached to the Complaint, is missing page 3.   However, the Court may take judicial notice of the state court docket and accordingly takes judicial notice of the complete Suppression Order, entered in *Florida v. Myrthil*, Case No. 14-7695CF10A, on May 5, 2017.   Moreover, while the Court has reviewed the factual findings of Judge Kollra found in the Suppression Order, the Court recounts in this opinion the facts as alleged in Plaintiff's operative Second Amended Complaint, ECF No. [36] ("Complaint").

arrested Plaintiff for failure to wear a safety belt and fraud or attempt to use another's identification. *Id.* ¶ 26.

Ten months later, on June 4, 2014, Plaintiff was charged by information with forty-six counts of Criminal Use of Personal Information and seven counts of Fraudulent Use of Deceased Individuals' Personal Information. *Id.* ¶ 27, 36.[2] Plaintiff moved to suppress the evidence collected during the search on October 11, 2016. ECF No. [36] at 23. Judge Kollra held a hearing on the motion to suppress on December 11, 2014 during which Defendant Schade testified. ECF No. [36] at 31. Judge Kollra subsequently held a bifurcated pretrial hearing on the suppression motion which began on February 17, 2017 and ended on March 15, 2017. *Id.* at 23. Plaintiff's counsel put on several witnesses at the hearing, including Plaintiff and Mr. Henley. Of the Defendants, only Officer Adamson testified at this second suppression hearing. ECF No. [36] at 31.

On May 5, 2017, Judge Kollra entered the Suppression Order, granting Plaintiff's motion to suppress and finding Plaintiff's testimony credible and Mr. Henley's testimony not credible. ECF No. [36] at 33. Judge Kollra further found the testimony of Officers Adamson and Schade generally credible, and found that the Officers conducted a lawful traffic stop for a seatbelt violation. *Id.* at 31. However, Judge Kollra also found Officer Schade's testimony that Plaintiff consented to the search not credible and that the Officers had no reasonable suspicion to conduct the search of the vehicle. *Id.* at 32. Accordingly Judge Kollra found the search unlawful, and

---

[2] The Court notes that while Plaintiff's Complaint states that he was charged on June 4, 2014, the Order Granting Defendant's Motion to Suppress, attached to the Complaint, states that he was charged on June 3, 2014. *Cf.* ECF No. [1] at 27 with ECF No. [1] at 36.

suppressed the physical evidence and statements obtained as a result of the search. *Id.* at 33; *see also* ECF No. [36] ¶ 31.

After entry of the Suppression Order, the charges against Plaintiff were subsequently dismissed. Plaintiff filed an internal affairs complaint with the Police Department. ECF No. [36] at ¶ 32. That complaint was found by the Police Department to be unsubstantiated. *Id.* Plaintiff then filed this lawsuit.

## II. THE MOTIONS

Plaintiff initially filed his complaint on January 2, 2018. ECF No. [1]. In the operative Second Amended Complaint, Plaintiff asserts six causes of action against Defendants, four of which are the subject of the pending Motions.[3] Counts II and III allege false arrest and false imprisonment against Defendants Schade and Adamson, respectively, in violation of 42 U.S.C. § 1983. Counts IV and V allege malicious prosecution against Defendant Schade and Adamson, respectively, in violation of 42 U.S.C § 1983.

Officer Adamson and Officer Schade both move to dismiss the counts alleged against them in nearly identical motions. ECF Nos. [45] & [56]. Both officers move to dismiss on four grounds which can be divided into two sets of arguments. First, Officers Adamson and Schade argue that Plaintiff's false arrest and false imprisonment claims are time barred. *Id.* at 2–4. Second, the Officers argue that they had either actual probable cause or, at a minimum, arguable probable cause to arrest Plaintiff and therefore are entitled to qualified immunity on both the

---

[3] As to Defendant the City of Fort Lauderdale, Plaintiff asserted two claims: Count I is styled as 42 § 1983 Claim Against Defendant PD [the City of Fort Lauderdale] for Supervisory Liability and Count VI is styled as "Negligent Retention Against Defendant PD [the City of Fort Lauderdale] as to Defendants Schade and Adamson." ECF No. [36] at 12–14, 19–20. The Court dismissed the City of Fort Lauderdale without prejudice on May 2, 2018 after the City was found to be in default and Plaintiff failed to move for default judgment.

false arrest and false imprisonment claims and malicious prosecution claims.  *Id.*  at 4–11. Specifically, the Officers argue that the analysis of probable cause for the purposes of determining qualified immunity in a civil case may include material—including physical evidence and statements—that was the product of an illegal search.  *Id.* at 4–8.  Thus, the Officers argue that Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution must be dismissed because the Officers had probable cause to arrest Plaintiff based on the laptops and bank and credit cards found in Plaintiff's car, even if those items were excluded in the criminal case.  *Id.*

In response, Plaintiff first argues that Plaintiff's claims for false arrest and false imprisonment did not accrue until March 15, 2017 when Plaintiff was made aware of the facts that support his claims based on the testimony of Officer Adamson at the second suppression hearing.  ECF Nos. [50] & [63] at 3–4.  Plaintiff further argues that, even if Plaintiff's false arrest and false imprisonment claims accrued earlier, they are subject to the doctrines of equitable tolling or fraudulent concealment, and therefore timely.  ECF Nos. [50] & [63] at 5–6.  As to Defendants' qualified immunity arguments, Plaintiff argues that there was no probable cause for both the initial stop and the subsequent search. Therefore, neither Officer is protected by qualified immunity.  ECF No. [50] at 7–11.

### III.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6), which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the

plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## IV. Analysis

### a. Plaintiff's Claims for False Arrest and False Imprisonment

Defendants first move to dismiss the false arrest and false imprisonment claims as untimely. The Court looks to Florida's state statute of limitations for personal injury actions to determine the applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. *Wallace v. Kato*, 127 S.Ct. 1091, 1094 (2007); *Uboh v. Reno*, 141 F.3d 1000, 1002 (11th Cir. 1998). The parties agree that Florida's four-year residual statute of limitations applies to Plaintiff's claims for false arrest and false imprisonment. ECF Nos. [45] & [56] at 3; [50] & [63] at 3; *see also Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003); *Burgest v. McAfee*, 264 Fed. App'x 850, 853 (11th Cir. 2008).

The question of when the statute of limitations begins to run—that is, when the cause of action accrues—is determined by federal law. *Uboh*, 141 F. 3d at 1002 (citing *Wilson v. Garcia*, 471 U.S. 261, 268–71 (1985)). Under federal law, a cause of action accrues when a plaintiff knew or should have known of the injury that forms the basis of the claim. *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (holding that the limitations period begins to run "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights"). Put another way, a claim accrues, and the limitations period begins to run, "when the plaintiff has a complete and present cause of action . . . , that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388; *see also Crespo v. Fla. Comm'n on Offender Review*, No. 17-12007-H, 2017 WL 9324513, at *2 (11th Cir. Dec. 6, 2017).

Applying this rule, the Supreme Court has specifically held that the limitations period for a Section 1983 claim for false arrest "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 127 S.Ct. at 1100. Similarly, a claim for false imprisonment accrues when legal process is initiated against the allegedly falsely imprisoned individual. *Burgest*, 264 F. App'x at 852.

Plaintiff was initially detained on August 3, 2013, and while the Complaint does not include the date of his arraignment, Florida law requires that "every arrested person shall be taken before a judicial officer . . . within 24 hours of arrest," Fla. R. Crim. P. 3.130(a). Accordingly, the Court may assume that Plaintiff received his initial appearance on August 4, 2013. *Burgest*, 264 F. App'x at 852 ("Florida law requires that 'every arrested person shall be taken before a judicial officer . . . within 24 hours of arrest,' . . . so we assume that Burgest received an initial appearance on [the day after his arrest on] November 13, 1998, at which point his complaint for false imprisonment accrued."). Thus, in order for Plaintiff's claims for false arrest and false imprisonment to be timely, he necessarily must have filed them by August 4, 2017.

Plaintiff filed this lawsuit on January 2, 2018. Without any the benefit of tolling, Plaintiff's claim for false arrest and false imprisonment is untimely. Federal courts generally refer to state law for tolling rules in Section 1983 actions. *Crespo*, 2017 WL 9324513, at *3 (citing *Wallace*, 549 U.S. at 394). Florida Statues Section 95.051 provides nine circumstances in which the statute of limitations may be tolled. *Id.* (citing Fla. Stat. § 95.051(1)(a)-(i)).[4] However, none apply to this case.

_____

[4] The nine enumerated circumstances are as follows:

Plaintiff argues that he could not have filed this claim until Officer Adamson testified in the suppression hearing because Plaintiff did not have the information that formed the basis of his claim. However, taking the allegations in the Complaint as true, Plaintiff knew at the time of the stop that he was wearing his seatbelt but was stopped for a seatbelt violation. Plaintiff also knew that after he had refused to give consent, Officers Adamson and Schade proceeded to search his vehicle. While Plaintiff may have become aware of additional details regarding the events of that evening during the testimony of Officer Schade on December 14, 2016 and the testimony of Officer Adamson on March 15, 2017, Plaintiff knew or should have known that

(1) The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:
(a) Absence from the state of the person to be sued.
(b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.
(c) Concealment in the state of the person to be sued so that process cannot be served on him or her.
(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
(e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
(g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
(h) The period of an intervening bankruptcy tolls the expiration period of a tax certificate under s. 197.482 and any proceeding or process under chapter 197.
(i) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

Fla. Stat. § 95.051(1)(a)-(i).

Officers Schade and Adamson may have violated his constitutional rights during an allegedly pretextual stop for a seatbelt violation and the subsequent search of his vehicle without his consent. Plaintiff was further aware that the police report documenting the stop and arrest contained allegedly false statements. ECF No. [1] at 35–36. Accordingly, Plaintiff's claims for false and false imprisonment accrued on August 4, 2013 and are therefore untimely.

### b. Plaintiff's Claims for Malicious Prosecution

In addition to their statute of limitations arguments, Defendants move to dismiss all of Plaintiff's claims based on qualified immunity. Because the Court has already found Plaintiff's false arrest and false imprisonment claims untimely, it need only address Defendants' assertion of qualified immunity as to the malicious prosecution claims.

The Eleventh Circuit has identified malicious prosecution as a Fourth Amendment violation cognizable under Section 1983. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010); *Wood*, 323 F.3d at 881 (11th Cir. 2003); *Uboh*, 141 F.3d at 1002–04. "To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The Court may analyze these prongs in either order. *Id.*

As to the first prong, Florida law requires the following six elements to support a claim of malicious prosecution: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for

the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." *Kingsland*, 382 F.3d at 1234.

As to the second prong, an arrest does not violate the Fourth Amendment if the arresting officers had probable cause for the arrest. *Lee v. Ferraro*, 284 F.3d 1188, 1194–95 (11th Cir. 2002). Thus, the existence of probable cause defeats malicious prosecution claim under Section 1983. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256–57 (11th Cir. 2010). "For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Lee*, 284 F.3d at 1195. "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted). Thus, an officer must have more than simply a suspicion or hunch, but need not have "convincing proof" nor sufficient evidence to support a conviction to for a finding of probable cause. *Wood*, 323 F.3d at 881 (quoting *Lee*, 284 F.3d at 1195); *see also Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003).

Defendants argue that they are entitled to qualified immunity on Plaintiff's malicious prosecution claim. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kingsland*, 382 F.3d at 1231 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is

knowingly violating the federal law," *Wood*, 323 F.3d at 877 (quoting *Lee*, 284 F.3d at 1194), and the doctrine accordingly represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *Id.* at 1233.

In order to prevail on a motion to dismiss based on qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). "Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Supreme Court has outlined a two-part test to determine whether a plaintiff meets their burden: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.' " *Vinyard*, 311 F.3d at 1346 (quoting *Saucier*, 533 U.S. at 201). "[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme Court caselaw can 'clearly establish' law in this

circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d 1220, 1231–32 (11th Cir. 2004) (citing *Harlow*, 457 U.S. at 819; *Lee*, 284 F.3d 1188, 1195 (11th Cir. 2002)) If reasonable public officials could differ on the lawfulness of the defendants' actions, the defendants are entitled to immunity. *Storck*, 354 F.3d at 1314. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.' " *Kingsland*, 382 F.3d at 1231–32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Moreover, to be protected by qualified immunity, "an officer need not have actual probable cause but only 'arguable probable cause.' " *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). An officer has arguable probable cause where reasonable officers in the same circumstances and possessing the same knowledge could have believed that probable cause existed to arrest—even if that belief was mistaken. *Case*, 555 F.3d at 1327 (quoting *Lee*, 284 F.3d at 1195); *Wood*, 323 F.3d at 878 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

The parties do not dispute that the Officers were acting within the scope of their discretionary authority. However, the Court's inquiry into the applicability of qualified immunity to Plaintiff's claims of malicious prosecution against Officers Schade and Adamson starts and ends with an inquiry into probable cause. The search of the vehicle, while ultimately found to be unlawful by the state court, produced two laptops, multiple bank cards and credit cards not in Plaintiff's name, and documents listing, among other things, social security numbers with notations such as "good" or "dead." *See* ECF No. [36] at 35–36. Based on these findings,

Defendants had probable cause to arrest Plaintiff for the charge of "criminal use of personal identification information" as listed in the arrest affidavit. ECF No. [36] at 35.

Plaintiff argues in response to Defendants' Motions that the Court must exclude the physical evidence and statements recovered during the illegal search of Plaintiff's vehicle to in analyzing whether probable cause existed sufficient to defeat Defendants' Motions. However, this argument contradicts binding Eleventh Circuit precedent. In *Black v. Wigington*, 811 F.3d 1259, 1263 (11th Cir. 2016), plaintiffs sued officers involved in a search of their trailer, which ultimately resulted in the Plaintiffs' arrest, under Section 1983. In *Black*, officers attempted to execute a search warrant for a particular individual, believing erroneously that he lived at Plaintiffs' trailer located in the woods. When the officers arrived at the trailer no one answered the door, but the police found that a door to the trailer had a cut screen near the doorknob, and that the door was unlocked. The officers entered the trailer, performed a protective sweep, and observed drug paraphernalia and bullet proof vests and uniforms belonging to the sheriff's department. *Id.* at 1263. The sheriff's office subsequently obtained a search warrant, relying on the items observed in the trailer. While the sheriff's office was still on the premises, the plaintiffs returned home and were arrested for charges related to the drugs and property found in the trailer. *Id.* at 1263.

In the underlying state court action against them, the plaintiffs in *Black* moved to suppress the evidence recovered in the trailer. The state court granted plaintiffs' motion to suppress and the charges were eventually dropped. *Id.* at 1264. The plaintiffs subsequently sued, among others, the police officers for malicious prosecution. Like here, the officers claimed they were entitled to qualified immunity, "contend[ing] that the drugs, drug paraphernalia, and clothing from the Blacks' trailer provided probable cause to arrest them. It does not matter

whether this evidence was discovered during an illegal search . . . because the exclusionary rule does not apply in civil cases." *Id.* at 1266–67.

In finding that the officers were entitled to qualified immunity, the Eleventh Circuit stated: "

> The Blacks argue that the evidence from their trailer could not provide probable cause because it was obtained during an illegal search, but they wrongly assume that the exclusionary rule applies in this civil case. In a criminal case, a warrant based on evidence discovered during an illegal search might be invalid as fruit of the poisonous tree. The fruit-of-the-poisonous-tree doctrine is a component of the exclusionary rule. But the exclusionary rule is not a "personal constitutional right" or a requirement of the Fourth Amendment; it is a judicially created remedy that is meant to prevent violations of the Fourth Amendment "through its deterrent effect."
>
> . . .
>
> We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers. The cost of applying the exclusionary rule in this context is significant: officers could be forced to pay damages based on an overly truncated version of the evidence. And the deterrence benefits are miniscule. Police officers are already deterred from violating the Fourth Amendment because the evidence that they find during an illegal search or seizure cannot be used in a criminal prosecution—the primary concern and duty of the police. Moreover, plaintiffs can still sue a police officer for the illegal search or seizure, regardless whether the officers can rely on illegally obtained evidence to defend themselves against other types of claims. This threat of civil liability will adequately deter police officers from violating the Fourth Amendment, whether or not the exclusionary rule applies in civil cases.

*Black*, 811 F.3d at 1267–68. The Eleventh Circuit therefore found that "[t]he Blacks' claim of malicious prosecution fails because [the deputies and investigator] are entitled to qualified immunity. The evidence from the Blacks' trailer provided probable cause for the arrest warrants. It does not matter whether that evidence was discovered in compliance with the Fourth

Amendment because the exclusionary rule does not apply in a civil suit against police officers." *Id.* at 1269.

Applying *Black* to the instant case, Plaintiff's claim of malicious prosecution must also fail. Officers Schade and Adamson discovered sufficient material during the course of the unlawful search that supported, at a minimum, arguable probable cause. Because this Court may not apply the exclusionary rule in this civil case against the Officers, the Court must examine the physical evidence and statements found during the entire search as alleged in the Complaint. Plaintiff alleges in the Complaint that Defendants located "two laptop computers," and "credit cards an bank cards[] not in the Plaintiff['s] name." ECF No. [1] ¶¶ 22-23.[5] Taking these allegations as true, these facts are sufficient for at least arguable probable cause for Plaintiff's arrest. Accordingly, because the arrest was supported by at least arguable probable cause, Plaintiff's malicious prosecution claim must be dismissed because the Officers are entitled to qualified immunity.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's claims for false arrest and false imprisonment are time barred and dismissed with prejudice. While Plaintiff's claims for malicious prosecution must be dismissed based on arguable probable cause, the Court finds that dismissal without prejudice as to Plaintiff's malicious prosecution claims is warranted. *Black v. Wigington*, 811 F.3d 1259, 1267–68 (11th Cir. 2016).

---

[5] The Court also notes that Plaintiff attached to his Complaint a copy of the arrest affidavit, which states: "Search of the vehicle revealed a computer bag with two laptops and a piece of paper containing multiple credit cards. He also has a notebook with several names with personal information [,] i.e.: names, DOB, SS #'s and account numbers. There were notations made by each name of "good" or "dead." Among the names was that of the victim [Thomas Henley] with his phone number and bank account number. Victim stated that he did not know [Plaintiff] and that he never gave permission nor his account information to [Plaintiff]. Victim also stated that his account had also been compromised last month. Victim expressed a desire to prosecute." ECF No. [1] at 35–36.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  The Motions, **ECF Nos. [45] and [56]**, are **GRANTED**;

2.  Counts II and III are **DISMISSED WITH PREJUDICE AS TIME BARRED;**

3.  Counts IV and V are **DISMISSED WITHOUT PREJUDICE**;

4.  To the extent not otherwise disposed of, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED**;

5.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of August, 2018.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record